IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOUGLAS DEJARNETTE § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| PROSPERITY BANK, § | No. _____ |
| § | |
| Defendant. § | |
| § | |
| § | |

## COMPLAINT

Plaintiff, Douglas DeJarnette, files his Complaint against Prosperity Bank, alleges and states as follows:

## I.

## PARTIES

1. Plaintiff, Douglas DeJarnette ("**DeJarnette**") is a resident and citizen of the State of Oklahoma.

2. Defendant, Prosperity Bank ("**Prosperity**") is a Texas State Financial Institution, with its principal place of business at Prosperity Bank Plaza, 4295 San Felipe, Houston, Texas 77027, and may be served through its registered agent David Zalman at 1301 North Mechanic, El Campo, Texas 77437.

## II.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff seeks a declaratory judgment in which the value of the right at issue exceeds $75,000,[1] exclusive of interest and costs, and complete diversity of citizenship exists between the Parties.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in the Southern District of Texas.

## III.

## FACTS

### A.  The Acquisition and Employment Agreement

5.      Commencing in July of 2010, DeJarnette was an employee of F&M Bank and Trust Company ("**F&M**") in Tulsa, Oklahoma as Senior Vice President and Private Bank Manager.  At all times prior to the events giving rise to this suit, DeJarnette was not subject to any employment agreement with F&M nor was he subjected to non-solicitation provision or non-competition provisions of any nature.

6.      On August 24, 2013, DeJarnette, along with other senior F&M employees were notified of a mandatory meeting at the Tulsa, Oklahoma bank office to take place on Sunday, August 25, 2013.  At the meeting, DeJarnette and the other employees were informed that F&M was being acquired by Prosperity.

---

[1] *See, e.g., Birk v. Hub Int'l Sw. Agency, Ltd.,* No. EP-08-CA-259-FM, 2008 WL 4372694, at *3 (W.D. Tex. Sept. 11, 2008).  The rights at issue include DeJarnette's right to work within a 50 mile radius of any banking center of Prosperity in any "business similar to that of [Prosperity]" for a period of three years.  The Prosperity website indicates that it has 246 location in Texas and Oklahoma.  DeJarnette has already been offered employment by Valley National Bank, N.A., within the area that is purportedly restricted by the Employment Agreement. DeJarnette's salary for the three-year restricted period would exceed $75,000.  The market value of DeJarnette's right to work within the restricted area for a three year period exceeds $75,000.  *See id.* Indeed, Prosperity valued DeJarnette's right to work for single year at more than $260,000, as demonstrated by his Employment Agreement. *See id.*

**Complaint**                                              2
6408234.4

7. After being notified of the impending acquisition, DeJarnette and the other senior employees were presented with a new, non-negotiable Employment Agreement (the "**Employment Agreement**") that would cover the terms and conditions of their employment with Prosperity.

8. The Employment Agreement was drafted by counsel for Prosperity and contained many restrictive covenants that DeJarnette had never been subjected to during his career with F&M. Attached hereto as **Exhibit A** is a true and correct copy of the Employment Agreement.

9. DeJarnette was told on Saturday, August 24 that he had until Tuesday, August 27 – **72 hours** – to accept and sign the Employment Agreement, which contained an initial term of three (3) years. Further, DeJarnette was told that the proposed sale of F&M to Prosperity was, in part, contingent on executing the Employment Agreement and that the sale might fall apart if he did not sign the Employment Agreement immediately. Moreover, it was insinuated DeJarnette could lose his job if he did not sign the Employment Agreement.

10. Placing him in a position of further duress, DeJarnette feared that he could lose his 2012 earned but unvested bonus and 2013 bonus if he did not sign the Employment Agreement. As a father of two very young children, DeJarnette felt he had no choice but to agree to Prosperity's terms.

11. Despite the unreasonable pressure to immediately sign the Employment Agreement, DeJarnette requested in writing via e-mail on August 27, 2013 at 9:45 am to Gregg Jaynes, F&M's head of Human Resources, to modify the Employment Agreement to include an Oklahoma forum selection clause and to apply Oklahoma law. Attached hereto as **Exhibit B** is a true and correct copy of the e-mail to Mr. Jaynes from DeJarnette dated August 27, 2013. Mr. Jaynes told DeJarnette that in twenty-five (25) years of doing business, he had never seen a non-

compete enforced in Oklahoma. Ultimately, Prosperity responded that the Employment Agreement was not negotiable and refused to change the choice-of-law and forum selection clauses from Texas to Oklahoma.

12. Rather than agreeing to change the Employment Agreement's choice-of-law and forum selection clauses to Oklahoma, the senior management of F&M (now senior management with Prosperity) informed DeJarnette that the non-competition clause was "unenforceable" under Oklahoma law and, therefore, would not be a problem. DeJarnette relied on said representation including, but limited to, the comments by Mr. Jaynes. Mr. Jaynes told DeJarnette that an opinion existed from counsel regarding the non-enforceability of non-compete's in Oklahoma. Mr. Jaynes added that it could be available for his review but they would not send it electronically and that it needed to be reviewed in person. Indeed, DeJarnette was provided with a legal memorandum from Schadd Titus of Titus Hillis Reynolds Love Dickman & McCalmon addressed to Anthony Davis (the former CEO of F&M and now the chairman of the Tulsa Area and Turtle Creek Banking Center in Dallas for Prosperity) providing that non-competes under Oklahoma law are "highly suspect" and generally unenforceable. Attached hereto as **Exhibit C** are true and correct copies of photographs of the Memorandum that were taken by DeJarnette before he signed the Employment Agreement. Based on the representations that the non-competition clause would not be enforceable, DeJarnette executed the Employment Agreement. But for the representations that the non-competition clause was unenforceable, DeJarnette would not have executed the Employment Agreement.

B. **Prosperity's Conduct Post-Acquisition**

13. Before signing the Employment Agreement, DeJarnette and the other senior employees at F&M requested documentation regarding Prosperity's benefits package and loan incentive program. Prosperity represented that it would use "similar" terms and conditions as

F&M. However, Prosperity failed to provide benefits documentation prior to their imposed deadline for execution of the Employment Agreement.

14. After DeJarnette signed the Employment Agreement, Prosperity informed DeJarnette and the other senior employees that would no longer use F&M's terms and policies for future loans after June 9, 2014. Under Prosperity's benefits structure, DeJarnette has lost a significant amount of his total compensation and his vacation time was reduced. DeJarnette was deliberately misled about the lesser nature of Prosperity's benefits in order to induce him into signing the Employment Agreement. DeJarnette was also told that he would be reporting directly to Jeff Pickryl, the former president of F&M which was vital to DeJarnette. Indeed, it was Mr. Pickryl who recruited DeJarnette in 2010 and was the reason why DeJarnette remained at F&M. DeJarnette was again mislead, as he was not placed in a position to report directly to Jeff Pickryl. Attached to hereto as **Exhibit D** is a true copy of the e-mail from DeJarnette to Mr. Pickryl and Mr. Jaynes dated March 6, 2014 expressing DeJarnette's disappointment with Prosperity not allowing him to run the Private Bank for all of Prosperity and not being assigned to Mr. Pickryl. In this e-mail, DeJarnette requested more shares of Prosperity in lieu of this broken promise and was ultimately denied. Lastly, and before signing the Employment Agreement, DeJarnette was promised that he would run the Private Bank for all of Prosperity upon the merger. This did not occur until management recently offered him the position after the current head of Private Bank retired.

15. Since Prosperity's oppressive inducement of DeJarnette to sign the Employment Agreement, the working atmosphere at Prosperity deteriorated. Prosperity also threatened to sue former F&M employees if they left Prosperity and, indeed, is currently in litigation with five (5) former F&M employees that resigned from Prosperity. Moreover, Prosperity also threatened to

sue any prospective employers that hire any former F&M employees, no matter the terms and conditions of their employment.

16. Due to the oppressive conditions at Prosperity, DeJarnette resigned his position as of January 29, 2015, effective 30-days later, on March 1, 2015. DeJarnette has accepted an offer of employment from Valley National Bank, N.A. ("**Valley**"), commencing some date in March or April in which he will serve as Director of Private Bank in the Tulsa area and Jackson Hole, Wyoming. If enforceable (which it is not) DeJarnette's position with Valley may be in violation of the non-competition clause of the Employment Agreement. As a result, Valley waited to provide an offer of employment to DeJarnette until an **identical** restrictive covenant was held to be unenforceable by the Honorable Gray H. Miller in the United State District Court for the Southern District of Texas in the Memorandum Opinion and Order [Dkt. No. 93] in *Cardoni, et al. v. Prosperity Bank*, No. 4:14-cv-1946 (S.D. Tex. Oct. 6, 2014).

17. Although DeJarnette believes that the non-competition and non-solicitation clauses of the Employment Agreement are unenforceable, on January 29, 2105, in an attempt to avoid litigation, DeJarnette's counsel provided Prosperity with a letter stating that DeJarnette agrees not to (i) disclose any of Prosperity's confidential information, (ii) solicit any of Prosperity's employees, or (iii) directly solicit any of Prosperity's customers while employed at Valley. Attached hereto as **Exhbit E** is a true and correct copy of the January 29, 2015 letter. No response was made to such offer. Although DeJarnette does not believe that such measures are necessary, he did so to promote a peaceful existence with Prosperity and avoid needless and costly litigation.

18. Despite these concessions, Prosperity continues to assert its intention to file suit against DeJarnette for breach of the Employment Agreement.

## Count 1

## Declaratory Judgment

19. Plaintiff repeats and re-alleges each and every allegation of the preceding paragraphs.

20. The terms and provisions of the Employment Agreement concerning or relating to restrictive covenants are invalid and unenforceable as a matter of law.

21. An actual controversy exists because Prosperity has threatened legal action against Plaintiff based on contractual provisions that are unenforceable. Plaintiff, therefore, seeks a declaratory judgment that:

    a. The non-competition clause of the Employment Agreement must be interpreted according to Oklahoma law (*see* Memorandum Opinion and Order [Dkt. No. 93] in *Cardoni, et al. v. Prosperity Bank*, No. 4:14-cv-1946 (S.D. Tex. Oct. 6, 2014));

    b. The non-solicitation clause of the Employment Agreement must be interpreted according to Oklahoma law (*see* Memorandum Opinion and Order [Dkt. No. 93] in *Cardoni, et al. v. Prosperity Bank*, No. 4:14-cv-1946 (S.D. Tex. Oct. 6, 2014));

    c. based on Oklahoma law, the non-competition clause of the Employment Agreement is unenforceable;

    d. based on Oklahoma law, the non-solicitation clause of the Employment Agreement is unenforceable; and

    e. the non-solicitation and non-competition clauses of the Employment Agreement may not be judicially reformed to be enforceable because doing so would materially alter those provisions.

## JURY DEMAND

22. Plaintiff hereby requests a jury trial on all claims and issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that a declaratory judgment be entered holding that the non-competition and non-solicitation clauses of the Employment Agreement are unenforceable, and for such other and further relief as may be just, proper and allowable, including attorneys' fees.

Dated: February 9, 2015

Respectfully submitted,

**BRYAN CAVE LLP**

By: */s/ Keith M. Aurzada*
Keith M. Aurzada
Attorney-in-Charge
Texas Bar No. 24009880
Bradley Purcell
Texas Bar No. 24063965
2200 Ross Avenue, Suite 3300
Dallas, Texas 75201-2784
Telephone: (214) 721-8000
Facsimile: (214) 721-8100

**ATTORNEYS FOR PLAINTIFF**